IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DESTINY CLEANING SERVICES, LLC and TIMOTHY WILLIAMS,  )<br>)<br>) | |
| Plaintiffs,  )<br>) | |
| v.  ) | Case No. 1:24-cv-329-ECM-CWB |
| )<br>BEN E. KEITH COMPANY, et al.,  )<br>) | |
| Defendants.  ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This civil action is in federal court after having been removed from the Circuit Court of Coffee County, Alabama. (*See* Doc. 1). Removal was predicated upon diversity jurisdiction under 28 U.S.C. § 1332(a), and remand is being sought on grounds that complete diversity of citizenship is lacking. (*Id.*; *see also* Docs. 15, 24, 32, & 33). Resolution of the jurisdictional issue is dependent upon whether Scott Davison and Kaleb Richard are proper defendants. After careful review and consideration, the Magistrate Judge concludes that the Motion to Dismiss (Doc. 10) filed by Davison and Richard is due to be granted and that the Motion to Remand (Doc. 24) filed by Destiny Cleaning Services, LLC and Timothy Williams is due to be denied.

**I.      Background**

Destiny Cleaning Services, LLC ("Destiny") formerly held a contract to provide commercial cleaning services for a facility operated by Ben E. Keith Company ("BEK") in Elba, Alabama. (*See* Doc. 1-2 at p. 5, ¶¶ 7-9). Destiny and its owner, Timothy Williams, brought suit in state court to assert a variety of state law claims arising out of the termination of the contract. (*See id.* at p. 6, ¶ 28). Named as a defendant to the claims was BEK, along with alleged management personnel Scott Davison and Kaleb Richard. (*See id.* at p. 4, ¶¶ 2-4).

1

BEK removed proceedings under the authority of 28 U.S.C. §§ 1441(a) and 1332(a). (*See* Doc. 1; *see also* Doc. 15).  In its Notice of Removal, BEK asserts that Davison and Richard—both Alabama citizens—were fraudulently joined to defeat federal jurisdiction.  (Doc. 1 at p. 3; Doc. 15 at p. 7).  It is undisputed that Destiny and Williams likewise have Alabama citizenship. (*See* Docs. 29 & 31).   BEK, however, is considered a citizen of Texas for diversity purposes. (*See* Doc. 14).  Diversity jurisdiction thus rises or falls upon whether Davison and Richard are properly before the court.[1]

Shortly after removal, Davison and Richard filed a Motion to Dismiss (Doc. 10) raising the issue of fraudulent joinder and incorporating the argument set forth in the Notice of Removal filed by BEK.[2]  Plaintiffs in turn responded by filing a Motion to Remand (Doc. 24) wherein they asserted that claims had been properly stated against Davison and Richard.  All parties since have been afforded the opportunity to brief the threshold jurisdictional question.  (*See* Docs. 32 & 33).

## II.   Removal Jurisdiction

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) ("[L]ower federal courts are empowered to hear only cases for which there has been a congressional grant of jurisdiction … .").  Due to the inherent limitation on authority, it is incumbent upon a federal court to assure itself "at the earliest possible stage in the proceedings"

---

[1] The undersigned notes that Davison's name was misspelled "Davidson" in the Notice of Removal (*see* Doc. 1) and that Richard's name was misspelled "Richards" in the Complaint (*see* Doc. 1-2). The clerk of court is hereby **DIRECTED** to update the docket to reflect the correct spellings as Davison and Richard.

[2] Davison and Richard additionally raised grounds of insufficient process and insufficient service of process.  (*See* Doc. 10 at p. 2).

that it possesses jurisdiction. *See Univ. of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

With respect to civil actions filed initially in state court, removal to federal court is authorized only in circumstances where a district court would have had "original jurisdiction." *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."); *see also Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). And it falls upon the removing party to establish that such jurisdiction exists. *See*, *e.g.*, *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) ("[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal."); *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."); *see also Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010) ("Defendants may introduce their own … [supporting] documentation.").

"While § 1332 allows plaintiffs to invoke the federal courts' diversity jurisdiction, § 1441 gives defendants a corresponding opportunity." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). Nonetheless, because removal infringes upon state sovereignty and implicates central concepts of federalism, any jurisdictional doubts should be resolved in favor of remand. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) ("[W]here plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand."). Stated differently, a plaintiff's right to choose the forum and a defendant's right to remove "are not on equal footing." *Id*.

**III.    Discussion**

The Notice of Removal (Doc. 1) makes no assertion that removal was predicated upon a federal question under 28 U.S.C. § 1331.  Nor has the court's independent review of the record uncovered any issue that reasonably could be construed as "arising under the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C. § 1331.  Therefore, unless the requirements of 28 U.S.C. § 1332(a) are satisfied, subject matter jurisdiction is absent over this removed action. *See* 28 U.S.C. § 1441(a).

As pertinent here, 28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different States." Plaintiffs do not dispute that the requisite amount in controversy is satisfied, and the undersigned finds from a review of the record that BEK has met its burden of showing by a preponderance of evidence that the total amount in controversy "more likely that not" exceeds $75,000.00 exclusive of interest and costs—particularly given Plaintiff's representations in the news media (Doc. 15 at p. 13; Doc. 15-8; Doc. 32 at p. 2).  *See Tapscott*, 77 F.3d at 1356-57; *see also Pretka*, 608 F.3d at 752.

Determining whether there is a complete diversity of citizenship is not as simple.  *See Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("Federal diversity jurisdiction under 28 U.S.C. § 1332 requires 'complete diversity'—the citizenship of <u>every plaintiff</u> must be diverse from the citizenship of <u>every defendant</u>.") (emphasis added) (citation omitted).  The common Alabama citizenship of Plaintiffs on the one hand and Davison and Richard on the other generally would preclude the exercise of diversity jurisdiction.  *See Hood v. Veazey*, No. 2:20-cv-712-ECM, 2021 WL 3713048, at *1 (M.D. Ala. Aug. 20, 2021) ("Plaintiffs' complaint alleges that one

plaintiff and the defendants are citizens of the State of Alabama; therefore, there is not complete diversity and thus, no basis for diversity jurisdiction under 28 U.S.C. § 1332."). That being said, the Alabama citizenship of Davison and Richard may be disregarded if it is shown that they were fraudulently joined. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) ("Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity.").

As relevant in this instance, fraudulent joinder exists "when there is no possibility that the plaintiff can prove a cause of action against the [non-diverse] defendant." *Triggs*, 154 F.3d at 1287; *see also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). The burden of establishing fraudulent joiner is a "heavy one," and the fact that a plaintiff may not ultimately prevail against a defendant does not mean that the plaintiff has not stated a cause of action for purposes of the fraudulent joinder analysis. *See Crowe*, 113 F.3d at 1538; *see also Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (stating that a removing defendant must show fraudulent joinder "by clear and convincing evidence"). Accordingly, the question now is whether there is <u>any</u> possibility that Plaintiffs can establish a cause of action against Davison or Richard on the asserted state law claims for breach of contract, retaliation, conspiracy, and negligence.

A.  **Breach of Contract**

Count I of the Complaint purports to assert a claim against all named defendants for "Breach of Contract." (*See* Doc. 1-2 at p. 6, ¶¶ 29-33). A review of the underlying contract, however, reveals that the parties to the agreement are BEK and Destiny. (*See* Doc. 1-3 at pp. 2 & 8; *see also id*. at p. 8, ¶ 15: "BEK and [Destiny] are the only parties to this Agreement … ."). There are no allegations in the Complaint that either Davison or Richard are parties to the contract

5

or personally breached the contract. To the contrary, the Complaint expressly alleges that "[t]he Defendant <u>Ben E. Keith</u> breached the terms of the contract by canceling the contract … ." (Doc. 1-2 at p. 7, ¶ 32) (emphasis added). There is no possibility then that Davison or Richard could be liable on Plaintiffs' stated breach of contract claim. *See TKI, Inc. v. Nichols Rsch. Corp.*, 191 F. Supp. 2d 1307, 1316 (M.D. Ala. 2002) ("[T]here is no possibility that a state court could find that the Plaintiffs have a claim against Hodge, who is an agent, for breach of contract.") (citing *Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.,* 551 So. 2d 283, 285 (Ala. 1989)); *see also Holderfield v. Allstate Ins. Co.*, No. 4:13-cv-074, 2014 WL 1600309, at *2 (N.D. Ala. Apr. 21, 2014) ("Because [the individual defendant] was not a party to the contract, she cannot be liable for breach of contract.") (citing *Pate v. Rollison Logging Equip.*, 628 So. 2d 337, 343 (Ala. 1993) ("Even if considered a broker or an agent, Rollison was not a party to the insurance contracts and, therefore, could not be liable for breach of those contracts.")).

    **B.**    **Retaliation**

Count II of the Complaint purports to state a claim for "Retaliation" and alleges as follows in its entirety:

35. Plaintiff had a binding contract with Defendant Ben E. Keith.
36. Defendants, by and through their employees and/or agents, engaged in forms of retaliation because Mr. Williams was a vocal advocate for his community, and he was speaking against the State of Alabama (a large customer of Ben E. Keith) and the highway construction project.
37. Due to Mr. Williams['s] advocacy, Defendant Ben E. Keith tried to silence Mr. Williams by transferring a large amount of money, presumably "Hush Money," to stop Mr. Williams from advocating for himself and residents of the Shiloh Community.
38. After Williams rejected the money, he was directed to transfer the money back to a bank chosen by Ben E. Keith Company.
39. Mr. Williams was also subjected to threats by management from Ben E. Keith Company for refusing to accept the money, and at one point was accused of coordinating and orchestrating the large transfer.

> 40. Once the money was received back from Mr. Williams, Defendant BEK terminated the contract Destiny had with BEK in retaliation for him not accepting the money and refusing to remain silent.
>
> 41. Because of the Defendants['] retaliation, Plaintiff was caused to suffer damages in the form of future earnings, damage to Destiny's reputation within the community, and loss of other contracts that were associated with Ben E. Keith Company.

(Doc. 15-1 at p. 7). However, the undersigned is aware of no recognized claim for "retaliation" under Alabama law. *See Bailey v. DAS N. Am., Inc.*, 473 F. Supp. 3d 1310, 1335 (M.D. Ala. 2020) ("Alabama does not recognize a common-law tort for ... retaliation.") (citation omitted). Nor have Plaintiffs provided any authority to demonstrate the possible viability of such a claim.

In their Motion to Remand, Plaintiffs attempt to recharacterize Count II as a claim for "intentional interference with business relations." (Doc. 24 at p. 7). Yet Count II is clearly entitled "Retaliation" and otherwise makes no direct or implied reference to the elements necessary to succeed on a claim for "intentional interference with business relations." *See Hammonds v. Hyundai Motor Mfg. Ala., LLC*, No. 2:10-cv-103-TFM, 2011 WL 2580168, at *9-10 (M.D. Ala. June 28, 2011) (citing elements). Plaintiffs' post hoc rebranding of Count II cannot be considered when evaluating jurisdiction—which must be viewed in light of the pleadings as they existed at the time of removal. *See Henderson v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 3:11-cv-295, 2011 WL 3503171, at *5 (M.D. Ala. Aug. 10, 2011) ("While Plaintiff's newest theory of the case appears to be inconsistent with the theory of the case pre-removal, the law is clear that '[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal ... .'") (footnote and citations omitted); *see also Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) ("[Fraudulent joinder] determinations should be made based upon the plaintiff's pleadings at the time of removal"); *see also Legg*, 428 F.3d at 1322 (examining "the plaintiff's pleadings at the time of removal").

### C. Conspiracy

Count III of the Complaint alleges that "[t]he individual defendants … reached a mutual understanding and conspired with each other to violate Plaintiff[s'] rights under the terms of [the] contract." (Doc. 1-2 at p. 8, ¶ 43). Again, however, Plaintiffs have asserted a purported claim that simply does not exist under Alabama law. "Alabama law is clear that a conspiracy 'is not an independent cause of action; therefore, when alleging conspiracy, a plaintiff must have a viable underlying cause of action.'" *Alabama Psychiatric. Servs. v. Ctr. for Eating Disorders, L.L.C.*, 148 So. 3d 708, 715 (Ala. 2014) (citations omitted). And "a breach of contract is insufficient to sustain a conspiracy claim." *Wiggins v. Ellis*, No. 2:12-cv-02705, 2021 WL 537274, at *31 (N.D. Ala. Feb. 12, 2021) (citing *Barber v. Stephenson*, 69 So. 2d 251, 255 (Ala. 1953) ("[A]n action for conspiring with another to induce the latter to break his contract cannot be maintained, the remedy being to sue on it.")); *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006) ("Nor has Dr. Hooper cited applicable caselaw to establish that a breach of contract similar to the breach he alleges by Columbus can be the underlying wrong upon which a civil conspiracy can rest."). *See also M&F Bank v. First Am. Title Ins. Co.*, 144 So. 3d 222, 234 (Ala. 2013).

### D. Negligence

Count IV of the Complaint purports to assert a claim against all named defendants for "Negligence." (*See* Doc. 1-2 at p. 8, ¶¶ 47-51). It is apparent from the allegations that the so-called negligence claim relates directly to the manner in which the subject contract was performed: "Defendant had a duty to Plaintiff[s] to handle the contract with Plaintiff[s] in a manner as not to negligently interfere with the business relationship between Plaintiff and Defendants." (*Id.* at ¶ 48). But again, neither Davison nor Richard was a party to the contract. Moreover, it is well

settled that "Alabama does not recognize a tort-like cause of action for the breach of a duty created by contract." *Blake v. Bank of America, N.A.,* 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2012); *Perkins Commc'n, LLC v. D'Shannon Prods., Ltd.*, No. 7:15-cv-01172, 2016 WL 11634348, at *2 (N.D. Ala. Oct. 13, 2016) ("[F]ederal courts in Alabama 'have consistently concluded that when the duty allegedly breached is the duty created by the contract itself as opposed to the general duty of care owed to everyone, the court must treat the claim as a breach of contract and not as a tort.'") (quoting *Citizens Bank & Trust v. LPS Nat'l Flood, LLC*, 51 F. Supp. 3d 1157, 1170 (N.D. Ala. 2014)).  Although Alabama does recognize a claim for the <u>intentional</u> interference with a contractual relationship, that is not what Count IV alleges.  And even had Plaintiffs purported to assert such a claim, the allegedly interfering parties must be <u>strangers</u> to the relationship. *See, e.g., Waddell & Reed, Inc. v. United Invs. Life Ins. Co.,* 875 So. 2d 1143, 1157 (Ala. 2003). Here, Davison and Richard—both alleged to be managers for BEK—would not so qualify. (*See* Doc. 1-2 at p. 4, ¶¶ 3-4).  *See also McCreight v. Auburn Bank*, 611 F. Supp. 3d 1336, 1343-44 (M.D. Ala. 2020).

      **E.**    **Fictious Defendants**

Plaintiffs' alternate contention that the citizenship of fictitious defendants should be considered when evaluating diversity (*see* Doc. 24 at pp. 5-6) is without merit.  Section 1441(b)(1) clearly states that "[i]n determining whether a civil action is removable ... the citizenship of defendants sued under fictitious names shall be disregarded."  *See also Davis ex rel. Est. of Davis v. Gen. Motors Corp.*, 353 F. Supp. 2d 1203, 1205 n.3 (M.D. Ala. 2005) ("For purposes of removal, the court does not consider the citizenship of fictitious defendants in assessing complete diversity.").  This is so "[e]ven 'if the fictitious defendants [are] likely' not diverse."  *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) (citation omitted).

**IV.    Conclusion**

On the current record, the Magistrate Judge concludes that clear and convincing evidence demonstrates that there is no possibility that an Alabama court would find the Complaint to state a viable cause of action against either Davison or Richard.  *See Legg*, 428 F.3d at 1325 n.5 ("The potential for legal liability 'must be reasonable, not merely theoretical.'") (citation omitted). Plaintiffs cannot now add a post-removal gloss that essentially would rewrite the allegations. Nor can remand be predicated upon Plaintiffs' arguments of judicial economy or forum shopping. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 355 (1988) ("[A] district court may not remand a case to a state court on a ground not specified in the removal statute."); *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336, 345 n.9 (1976) ("Lower federal courts have uniformly held that cases properly removed from state to federal court within the federal court's jurisdiction may not be remanded for discretionary reasons not authorized by the controlling statute."), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996).  For all of these reasons, it is the **RECOMMENDATION** of the Magistrate Judge that the pending Motion to Dismiss (Doc. 10) be granted and that the pending Motion to Remand (Doc. 24) be denied such that this action hereafter moves forward in federal court and solely against BEK.  It is the further **RECOMMENDATION** of the Magistrate Judge that the pending Motion for Entry of Default (Doc. 19) be denied and that the pending Motion for Enlargement of Time (Doc. 23) be granted such that Plaintiffs are afforded a period of fourteen days to respond to BEK's counterclaims.[3]

---

[3] In response to the Complaint, BEK filed an Answer and included separate counterclaims for "Declaratory Judgment" and "Breach of Contract."  (*See* Doc. 2 at pp. 10-12).  When Plaintiffs failed to submit a response within the time permitted by law, BEK sought the entry of default. (*See* Doc. 19).  Plaintiffs have requested a period of fourteen days to respond in the event the Motion to Remand is denied.  (*See* Doc. 23).

It is **ORDERED** that all objections to this Recommendation must be filed no later than **February 27, 2025**. An objecting party must identify the specific portion(s) of factual findings/legal conclusions to which objection is made and must describe in detail the basis for each objection. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 13th day of February 2025.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**